United States District Court
for the
Southern District of Florida

| Alexander Rovt, Plaintiff, | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 18-60880-Civ-Scola |
| Big Al's Gun and Pawn, Inc., | ) | |
| Defendant. | ) | |

**<u>Order on Motion to Dismiss</u>**

This matter is before the Court upon Defendant Big Al's Gun and Pawn, Inc.'s motion to dismiss Plaintiff Alexander Rovt's First Amended Complaint. Rovt raises two claims against the Defendant, a discrimination claim pursuant to 42 U.S.C. § 1981, and a tortious assault claim, based on an altercation between one of the Defendant's employees, John Doe, and Rovt at the Defendant's shooting range. The Defendant contends that Rovt has failed to state a claim. Upon review of the parties' briefs, the relevant legal authorities, and the record, the Court **grants** the Defendant's motion to dismiss (**ECF No. 32**).

I. **Background**

This case arises from Rovt's visit to the Defendant's gun range on March 21, 2018. (Am. Compl., ECF No. 25 at ¶ 8.) While on vacation in Florida from New York, Rovt, along with his son and a friend, went to the Defendant's establishment to rent guns to use at the shooting range. (*See id.* at ¶ 8.)

Upon entry into the Defendant's facility, Doe asked for photo identification from the group. (*Id.* at ¶ 9.) Rovt's son and friend provided their driver's licenses, while Rovt, who did not have his driver's license with him, provided his Global Entry identification card and City of New York gun permit instead. (*Id.* at ¶¶ 10–11.) Doe "exclaimed" that he did not know what the Global Entry card was. (*Id.* at 12.) Rovt then asked Doe to find out from the manager if his forms of identification were acceptable. (*Id.* at ¶ 13.) Doe did so, but ultimately told Rovt that his identification was not acceptable. (*Id.* at ¶ 14.) When Rovt asked Doe why that was the case, Doe responded that he did not "give a f**k about it" and walked away from Rovt. (*Id.* at ¶ 15.) Rovt asked to speak with Doe's manager. (*Id.* at ¶ 16.)

While Rovt was speaking with the manager, Doe began screaming at Rovt. (*Id.* at ¶ 17.) Doe began to say things like "this is America" and "I don't know

where the heck you're from." (*Id.* at ¶ 18.) Rovt is a naturalized United States citizen who left Soviet Ukraine by way of Hungary in 1984. (*Id.* at ¶ 19.)

Rovt and his group proceeded to exit the facility. (*Id.* at ¶ 20.) Doe followed Rovt and his group outside, screaming things like "now say something" and "now do something." (*Id.* at ¶ 21.) Doe appeared to be armed at the time, so Rovt instructed his son and friend to hurry into the car. (*Id.* at ¶ 22.) Doe continued to scream at Rovt, and at one point screamed "all New Yorkers are c**k suckers." (*Id.* at ¶ 23.) Doe remained outside screaming when Rovt and his group finally left. (*Id.* at ¶ 28.)

Rovt registered Doe's reference to "New Yorkers" as an attack on his Jewish identity. (*Id.* at ¶ 24.) Believing that Doe was shouting anti-Semitic language at him while armed, Rovt feared for his and his group's safety. (*Id.* at ¶ 27.) Rovt believed this to be the case despite the fact that no one mentioned religion or ethnic background. (*Id.* at ¶ 26.)

Rovt now raises two claims in his First Amended Complaint. First, Rovt alleges that the Defendant, by and through Doe's acts, violated Rovt's civil rights by "intentionally depriving him of the same rights enjoyed by other citizens concerning the creation, performance, enjoyment, and all benefits and privileges of a contractual relationship." (*Id.* at ¶ 35.) Second, Rovt asserts that the Defendant is liable for the assault committed by Doe. (*Id.* at ¶¶ 39–44.) The Defendant argues both claims should be dismissed.

## I. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

## II. Analysis

### A. Count I

The Defendant argues that Rovt's first claim must be dismissed for several reasons. The Defendant asserts that there is no indication that Doe knew that Rovt was Jewish, so he could not have discriminated against Rovt on that basis; Doe's use of the phrase "New Yorkers" as an ethnic slur is not actionable under 42 U.S.C. § 1981; and that there was a non-discriminatory basis for denying Rovt access to the gun range, i.e. Rovt's lack of the requisite identification.

"The elements of a cause of action under § 1981 are (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007) (internal quotation marks omitted). "To survive a Rule 12(b)(6) motion to dismiss, a claim alleging discrimination under § 1981 must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Enola Contracting Servs., Inc. v. URS Grp., Inc.*, No. 5:08CV2-RS-EMT, 2008 WL 506324, at *2 (N.D. Fla. Feb. 21, 2008) (internal quotation marks and citations omitted).

The Defendant does not dispute that Rovt is a member of a "racial minority" as the term has been construed by the Supreme Court and Eleventh Circuit. In *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604 (1987), the Supreme

Court held that in enacting § 1981, "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Id.* at 613. Courts have considered Jews to be a protected class under the statute. *See Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235 (11th Cir. 2000) (denying motion for class certification in § 1981 case because intent to discriminate based on Jewish identity would have to be shown on an individual basis); *see also Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617–18 (1987) (finding that Jews were a protected group that could state a claim under 42 U.S.C. § 1982).

The Defendant's main contention regarding Count I is that its employee could not have discriminated against Rovt because of his Jewish identity since there is no indication that Doe knew or had any way of knowing that Rovt is Jewish. Rovt argues in response that there are sufficient allegations in the complaint to raise a plausible claim and that discovery may lead to proof of the employee's true intentions.

In § 1981 cases, the plaintiff is required to plead facts that demonstrate intentional discrimination. *White v. Fla. Highway Patrol, Div. of Fla. Dep't of Highway Safety & Motor Vehicles*, 928 F. Supp. 1153, 1157–58 (M.D. Fla. 1996); *see also Rutstein*, 211 F.3d at 1239 (stating that a plaintiff in a non-employment discrimination case will ultimately need to "bring forth evidence of actual intent on the part of the defendant" to be successful). The Eleventh Circuit has held, in the employment discrimination context, that an employer cannot intentionally discriminate against someone based on their racial or ethnic identity without knowledge that the person is a member of the racial or ethnic group. *See, e.g., Fagerstrom v. City of Savannah, Ga.*, 627 F. App'x 803, 805 (11th Cir. 2015) ("Without *knowledge* of Fagerstrom's Asian racial identity, Lovett cannot have acted with an *intent* to discriminate based on that identity."). The Court finds this principle instructive here.

Although Rovt alleges that he "immediately registered" Doe's use of the term "New Yorkers" as an anti-Semitic attack, Am. Compl. ¶ 24, Rovt also specifically alleges that "no one mention[ed] religion or ethnic background within the Gun Range facility," *id.* at ¶ 26. There is no indication from the Amended Complaint that Doe knew that Rovt was Jewish or that he discriminated against him on that basis. Rovt has failed to point the Court to a single allegation that would support his claim that Doe intentionally discriminated against him based on his Jewish identity. Although racial and ethnic slurs can sometimes be disguised by seemingly neutral terms, Rovt has not sufficiently alleged that Doe's use of the term "New Yorkers" in the context in which it was stated was intended to be an attack on Rovt's Jewish identity.

Accordingly, the Court finds that Rovt has failed to allege a claim for discrimination under § 1981. The Court dismisses Count I.

### B. Count II

The Defendant argues that this Court should dismiss Count II because Rovt has failed to allege an imminent threat of harm and that Doe acted on the Defendant's behalf or in furtherance of its interests. The Defendant also raises jurisdictional concerns that the Court will address first.

The Court has original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and in cases involving diverse parties where the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332. The Defendant argues that Rovt has failed to sufficiently allege the Court's diversity jurisdiction over the tortious assault claim. The Defendant asserts that there are no allegations in the Amended Complaint regarding the damages Rovt suffered, aside from "getting his feelings hurt." (Mot., ECF No. 32 at 16.) Accordingly, the Defendant argues that Rovt cannot meet the good-faith requirement for pleading the necessary amount in controversy for this claim. Rovt did not respond to the Defendant's jurisdictional argument.

The main problem with the Defendant's argument is that this Court's jurisdiction is based on the jurisdictional allegations and claims set forth in Rovt's original complaint, not the Amended Complaint. When it comes to diversity jurisdiction, the amount in controversy is measured "on the date on which the court's diversity jurisdiction is first invoked" and is based on the aggregate value of the claims asserted. *The Burt Co. v. Clarendon Nat. Ins Co.*, 385 F. App'x 892, 894 (11th Cir. 2010). It has been long held that "[e]vents occurring subsequent to the institution of the suit which reduce the amount recoverable below the statutory limit does not oust jurisdiction." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 290 (1938). "[A]fter jurisdiction has attached, even if the plaintiff's amended pleadings reduce the claim below the requisite amount, the district court retains jurisdiction." *Regions Bank v. Dependable Warehousing & Distribution, Inc.*, No. 13-23390-CIV, 2014 WL 11944283, at *1 (S.D. Fla. Apr. 16, 2014) (McAliley, Mag. J.) (internal quotations and alterations omitted).

In Rovt's first complaint, Rovt claimed that the Court had federal question jurisdiction over his § 1981 claim and diversity jurisdiction over all of his claims, *see* Compl., ECF No. 1 at ¶¶ 3–4, as he does in his Amended Complaint, *see* Am. Compl., ECF No. 25 at ¶¶ 3–4. Rovt originally alleged four separate claims against the Defendant, two of which Rovt has since dropped.

The Defendant does not contend that Rovt's original claims could never have been worth more than $75,000 together and the Court finds no reason to contest Rovt's assertion the amount in controversy exceeded $75,000 when he filed suit. *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018) (internal quotation marks, alterations, and citations omitted) (explaining pleading standards for alleging amount-in-controversy requirement).

As for the substance of Count II, the Court finds that Rovt has failed to allege an assault claim, even if the Court assumes that Rovt can pursue his claim under a vicarious liability theory. Under Florida law, an assault is "any intentional, unlawful offer of corporeal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." *Colony Ins. Co. v. Barnes*, 189 F. App'x 941, 943 (11th Cir. 2006) (alterations omitted) (quoting *Winn & Lovett Grocery Co. v. Archer,* 126 Fla. 308, 171 So. 214, 217 (1936)); *see also Medina v. United Christian Evangelistic Ass'n*, No. 08-22111-CIV, 2009 WL 653857, at *2 (S.D. Fla. Mar. 10, 2009) (Cooke, J.).

The Defendant argues that Rovt has not sufficiently alleged that there was an imminent threat of harm. In particular, the Defendant emphasizes that its employee did not brandish a firearm, push Rovt, or threaten to do so. (Mot., ECF No. 32 at 12.) The Defendant claims that "[a]t most, the employee cursed and yelled at [Rovt]." (*Id.*) Rovt argues that the complaint sufficiently alleges a tortious assault claim and that more information about this claim may be uncovered through discovery.

An assault "must be premised upon an affirmative act—a threat to use force, or the actual exertion of force." *Sullivan v. Atl. Fed. Sav. & Loan Ass'n,* 454 So. 2d 52, 54 (Fla. 4th DCA 1984). "Mere words or threats are not assault; they must be accompanied by acts or circumstances to put one in reasonable apprehension of *imminent* harmful or offensive contact to the person." *Newman v. Gehl Corp.,* 731 F. Supp. 1048, 1051 (M.D. Fla. 1990). "The essential element of an assault is the violence offered, and not actual physical contact." *Doe No. 4 v. Epstein*, No. 08-80380-CIV, 2009 WL 383286, at *4 (S.D. Fla. Feb. 12, 2009) (Marra, J.) (quoting *McDonald v. Ford,* 223 So. 2d 553, 555 (Fla. 2d DCA 1969)).

The Court concludes that Rovt's allegations do not sufficiently allege a reasonable apprehension of imminent harm. First, Doe telling Rovt to "do something" or "say something," was, at best, an attempt to provoke *Rovt* to act

violently or to give Doe an excuse to act.[1] Rovt does not allege that Doe verbally threatened to harm him. Even if Doe had verbally threatened to hurt Rovt, such a threat would not have been enough to allege an assault. *Newman*, 731 F. Supp. at 1051. Further, there is no indication that Doe's acts indicated that harm was imminent even if his words could be construed as threats. *Cf. Lay v. Kremer*, 411 So. 2d 1347, 1349 (1st DCA 1982) ("While mere words do not constitute an assault, the words coupled with an appearance of rage and with a just completed shove could constitute an assault."). Although Rovt alleges that he recognized that Doe had a gun, *see* Am. Compl., ECF No. 1 at ¶ 22, Rovt does not allege that Doe was threatening to use the gun or intended to do so.

Accordingly, Rovt has failed to allege an assault. The Court therefore dismisses Count II.

### III. Conclusion

The Court therefore **grants** the Defendant's motion to dismiss (**ECF No. 32**). Rovt's complaint is dismissed without prejudice. The Court directs the Clerk to **close** this case.

**Done and ordered** in chambers, at Miami, Florida, on January 9, 2019.

_____
Robert N. Scola, Jr.
United States District Judge

---

[1] Doe's comments are reminiscent of the statements made by the plaintiff in the often-discussed English decision on assault, *Tuberville v. Savage*, 1 Mod 3 (1669). In that case, after the defendant insulted the plaintiff, the plaintiff stated, with his hand on his sword, "If it were not assize time, I would not take such language from you." *See* David Ormerod QC, et al., Blackstone's Criminal Practice 2018, B2.7 (Oxford Univ. Press 2017). The court found that this was not an assault because the plaintiff was stating he would *not* assault the defendant given the circumstances. *See id.* Similarly here, Doe's comments indicated that he would not act absent Rovt taking some action.